# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IGGESUND TOOLS AB, and IGGESUND TOOLS, INC., | |
| Plaintiffs, Counter-Claim Defendants. | Civil Action No.: 1:07-CV-00949-WSD |
| v. | |
| KEY KNIFE, INC., | |
| Defendant, Counter-Claim Plaintiff. | |

## KEY KNIFE'S RESPONSE TO IGGESUND'S OPENING CLAIM CONSTRUCTION BRIEF

TROUTMAN SANDERS LLP
Douglas D. Salyers
Georgia Bar No. 623425
John M. Bowler
Georgia Bar No: 071770
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308
T: (404) 885-3000
F: (404) 885-3900

*Counsel for Defendant,*
*Counter-Claim Plaintiff Key*
*Knife, Inc.*

## **TABLE OF CONTENTS**

I.      Introduction ........................................................................................ 1

II.     U.S. Patent Nos. 6,722,595 & 6,951,313 Contain Narrow Claims ................ 1

III.    U.S. Patent No. 7,159,626's Claims Are Limited to Elected Figures 1 & 2 .. 3

IV.     Although Correctly Citing Claim Construction Law, Iggesund's Constructions Often Ignore That Law ............................................................ 5

V.      Key Knife's Responses To Iggesund's '595 Patent Constructions ................ 7

        A.      "a carrier part" ................................................................................ 7

        B.      "an upper load bearing contact surface oriented toward the first surface of the cutter disk to engage a portion of a knife" .................. 7

        C.      "first knife edge forming surface" .................................................... 7

        D.      "downwardly in the direction of chip flow" ...................................... 7

        E.      "a point which is located beyond the outer surface of the carrier part and below the point at which the outer surface of the carrier part intersects the upper load bearing surface of said carrier part in the direction of chip flow" ........................................................................ 8

        F.      "being oriented along a first plane which diverges outwardly from the knife away from the first surface of the cutter disk" ........................... 8

        G.      "at a substantially acute angle to the first knife edge forming surface and first surface of the disk" .............................................................. 9

        H.      "and downwardly in the direction of chip flow in the passageway" .... 9

        I.      "the first and second surfaces of the rib intersect at an acute angle" . 10

        J.      "below the point at which the outer surface of the carrier part intersects the load bearing contact surface of the carrier part" .......... 10

VI.     Key Knife's Responses to Iggesund's '313 Patent Constructions .............. 11

        A.      "first knife edge forming surface" .................................................... 11

B.   "a first, chip directing portion which defines said chip directing portion of the knife extending outwardly from said planar portion of said chip breaking surface generally along a first plane" ..................11

C.   "which is transverse to a second plane defined by said first knife edge forming surface"........................................................................12

D.   "diverges outwardly from the knife body behind said chip deflecting surface" .............................................................................................12

E.   "said chip deflecting surface" ..........................................................13

F.   "at an acute angle to said chip deflecting surface" ...........................13

G.   "said acute angle being defined substantially within the rib between said first and third planes" ...............................................................13

H.   "said first knife support surface and said chip deflecting surface converging to form a tip portion of said rib".....................................14

I.   "said first and third planes intersecting substantially at said tip portion" ..............................................................................................14

J.   "said second and third planes intersecting at a point located within the area of projection of the knife onto said second plane".....................14

VII.   Key Knife's Responses to Iggesund's '626 Patent Constructions ...............15

A.   "a first clamping surface" ................................................................15

B.   "a second opposed clamping surface" and "an opposed second clamping surface"............................................................................15

C.   "opposed clamping features" ...........................................................15

D.   "opposing surface portions inclined with respect to each other" .......16

E.   "localization of clamping forces" .....................................................19

F.   "sized and shaped to register".........................................................19

VIII.   Conclusion ...........................................................................................20

ii

## I.       Introduction

As the Court is aware from the opening *Markman* briefs, Iggesund's patents claim very specific wood chipping knives.  In an effort to breathe life into and expand these "picture" claims, Iggesund ignores plain meaning, forgets about limiting statements made to the USPTO, asks the Court to rewrite its claims, and disregards the Federal Circuit's claim construction canons.  As a result, Iggesund's constructions should be rejected in favor of Key Knife's.

## II.      U.S. Patent Nos. 6,722,595 & 6,951,313 Contain Narrow Claims

The '595 and '313 Patents were substantially narrowed during prosecution. The USPTO only granted these patents after Iggesund amended its claims many times to include specific structural details to overcome the prior art.  One prior art reference that the USPTO forced Iggesund to overcome is *Carpenter* (USPN 4,669,517), invented by current Key Knife employees.  *Carpenter* teaches a knife with a virtually identical protective rib to that disclosed in Iggesund's patents.

When Iggesund's inventors filed the '595 and '313 Patents, apparently they thought they were the first to have a knife with a rib to reduce wear.  As the prosecution records for the patents show, however, the USPTO found many similar prior art knives, like *Carpenter*, with various shapes for protective ribs.  Indeed, on multiple occasions, the USPTO rejected Iggesund's claims because prior art knives

1

taught the basic structure of Iggesund's knife and disclosed every claimed structural limitation.  The USPTO did not allow either patent until Iggesund focused its claims on very specific and detailed limitations.

To obtain the '595 Patent, Iggesund added several critical limitations to the sole independent claim.  Iggesund amended the claim to require the rib to extend "beyond the outer surface of the carrier part and below the point at which the outer surface of the carrier part intersects the upper load bearing surface of said carrier part in the direction of chip flow."  ('595 Pat. FH, 209).[1]  Iggesund also amended the claim to require the rib's "first and second surfaces [to intersect] at an acute angle." (*Id*.).  Iggesund further amended its claim to require a knife carrier to have "an upper load bearing contact surface . . . to engage a portion of the knife." (*Id*. at 207).  Another narrowing limitation requires the rib's knife support surface to be "oriented along a plane which diverges outwardly from the knife toward the second surface of the cutter disk at a substantial acute angle to the first knife edge surface and first surface of the disk."  (*Id*. at 209).  Yet another limitation requires the knife to have "first and second planes intersect at a point located within the

---

[1] The patents and file histories are contained in the joint appendix previously submitted to the Court. [Dkt. #55].  Key Knife's patent citations are to columns and lines (e.g., '595 Pat., 4:25-48) and file history citations are to bates-numbered pages (e.g., '595 Pat. FH, 125).

area of a projection onto said second plane and outside the area occupied outside the knife." (*Id*. at 229-30; 237; 316).

Iggesund similarly narrowed the '313 Patent's sole independent claim during prosecution. As a result, the claim requires the knife's rib to have a "continuously smoothly curved generally concave chip directing portion." ('313 Pat. FH., 91-94). The claim also requires the knife's rib's supporting surface to support the knife when in use. (*Id*. at 58-59). Other narrowing limitations include: the "acute angle [formed by third plane's outward divergence from the knife body] being defined substantially within the rib between said first and third planes;" the rib's "first knife support surface and [the] chip deflecting surface converging to form a tip portion of [the] rib, [the] first and third planes intersecting substantially at [the] tip portion." (*Id*. at 107-08).

At the end of the day, the '595 and '313 Patent's claims are not as broad as Iggesund suggests. The claimed limitations and prior art require such a result. Iggesund's constructions ask the Court to rewrite the claims to remove or amend limitations specifically added to obtain allowance. The Court should not do so.

## III.    U.S. Patent No. 7,159,626's Claims Are Limited to Elected Figures 1 & 2

Iggesund draws a false distinction in its general description of the '626 Patent and attempts to construe the asserted claims as being directed to the

Key Knife Claim Construction Response Brief; Final

unelected species of Figures 3-5.  In particular, Iggesund states that Figures 1 and 2 illustrate embodiments having concave hollows while Figures 3-5 show clamping features with opposing inclined surfaces which face each other and are sized and shaped to localize the clamping forces from similarly flat inclined surfaces on the clamping element 18 towards the cutting edges 34, 36 of the knife.  (Iggesund's Opening Claim Construction Brief, at 4) ("Br.").

Iggesund specifically ignores that it elected the embodiments of Figures 1 and 2 in response to a restriction requirement and also ignores that Iggesund specifically chose claim language from the specification that describes a structure that is distinguished from the embodiments of Figures 3-5.  Specifically:

> *It will be appreciated however, that the clamping features need not be the concave hollows of the preferred embodiment. For example, in the alternative embodiments shown in FIGS. 3-5, the clamping features take the form of opposing inclined surface sections 148, 150, which are oriented diagonally relative to the edges 34, 36. The clamping features may also be structured such that each clamping feature comprises <u>two opposed surface sections inclined with respect to one another</u> and moving further apart as they extend rearwardly.* ('626 Pat., 11:11-19).

If Iggesund desired to capture the embodiments of Figures 3-5, it should have elected those species or chosen claim language corresponding to the language used in the '626 Patent for those embodiments.[2]

---

[2] Iggesund is currently prosecuting a divisional application to the '626 Patent (US Pat. App. No. 11/503,068).  Iggesund elected therein to pursue Figure 3 in

Claims should be construed to preserve a patent's validity. *Whittaker Corp. v. UNR Industries, Inc.*, 911 F.2d 709, 712 (Fed. Cir. 1990) ("claims are generally construed so as to sustain their validity, if possible"). Key Knife's construction does just that. Iggesund's construction, however, focuses on the embodiments in Figures 3-5, and is likely invalid due to prior art knives. Indeed, a comparison of Figure 4 to French Patent No. 2477945 and Swiss Patent No. CH687182 shows that adopting Iggesund's constructions will render the '626 Patent invalid.[3]



| '626 Patent Figure 4 | French Patent No. 2477945 | Swiss Pat. No. CH687182 |

## IV. Although Correctly Citing Claim Construction Law, Iggesund's Constructions Often Ignore That Law

Although Key Knife generally agrees with Iggesund's recitation of claim construction law, as will be shown below, Iggesund's proposed constructions often do not comply with that law. Iggesund cannot contort and twist its claims to enhance its litigation position. Rather, because Iggesund chose the language of its claims, it is stuck with that language here. *White v. Dunbar*, 119 U.S. 47, 51

---

response to a claim restriction. *See* Declaration of John M. Bowler ("Bowler Decl.") at Tabs 3 and 4. This related prosecution history further highlights that the '626 Patent's claims are specifically directed to Figures 1 and 2.

[3] Copies of French Patent No. 2477945 and Swiss Patent No. CH687182 are attached at Bowler Decl. Tabs 1 and 2.

(1886) (a patent holder may not "suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction").

Although Iggesund's brief lists numerous principles emphasizing the primacy of claim language and the "heavy presumption of ordinary meaning," Iggesund's constructions often ask this Court to improperly ignore ordinary meaning and rewrite patent claims. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). Additionally, Iggesund frequently commits a cardinal sin of patent law by importing specification limitations into its constructions. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001). Although acknowledging that claim differentiation requires each claim to have a different scope, Iggesund's constructions do not reflect this principle. In addition, Iggesund's constructions ignore limiting statements it made to obtain its patents. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*). Finally, Iggesund's resort to extrinsic evidence, like Key Knife patents, should also be rejected as inappropriate. *Id.* at 1318-19.

The law of claim construction, when properly applied, fully supports Key Knife's constructions and requires rejection of Iggesund's attempt to rewrite its claims.

V.    **Key Knife's Responses To Iggesund's '595 Patent Constructions**

A.    **"a carrier part"**

Key Knife addressed Iggesund's improper construction of this term in its opening brief.  Iggesund's attempt to redefine "carrier part" (a term used in its own patent) by referring to the term "counter knife" (used in Key Knife's patents) is an improper resort to extrinsic evidence.  *Phillips*, 415 F.3d at 1318-19.

B.    **"an upper load bearing contact surface oriented toward the first surface of the cutter disk to engage a portion of a knife"**

Unlike Key Knife's construction which stays true to the claim language, Iggesund's construction includes concepts not claimed like engaging "the forward face of knife in the direction of rotation or cutting."  Iggesund also ignores statements made in the specification and to the USPTO that this term specifically refers to that specific part of the carrier that engages the knife's rib.  ('595 Pat, 2: 32-36; '595 Pat. FH, 116.)  Thus, Key Knife's construction should be adopted.

C.    **"first knife edge forming surface"**

Iggesund's construction improperly includes concepts such as rear, back, relative to direction of knife, and front of knife that are not in the claim language. Thus, Key Knife's construction should be adopted.

D.    **"downwardly in the direction of chip flow"**

7

Although both sides agree this term requires the rib's first chip directing portion to extend downwardly in the chip flow direction (whichever way that may be), Iggesund's construction includes the additional concept that the rib must also be oriented "toward the bottom or second surface of the disk."  Nothing in the claims, specification, or file history supports the addition of this language.

**E.**   **"a point which is located beyond the outer surface of the carrier part and below the point at which the outer surface of the carrier part intersects the upper load bearing surface of said carrier part in the direction of chip flow"**

Iggesund's construction adds vague and contradictory words to an otherwise clear claim and thus improperly attempts to rewrite the claim.  Iggesund concedes that Key Knife's construction does not stray from the claim language and "simply" reorders and condenses claim language to capture required claim term concepts. (Br. at 15).  The Court should adopt Key Knife's constructions.

**F.**   **"being oriented along a first plane which diverges outwardly from the knife away from the first surface of the cutter disk"**

Iggesund concedes that Key Knife's construction "simply repeats" the term language yet argues it does not acknowledge the different orientation between the cutter disk and the knife support surface.  To the contrary, Key Knife's construction says the plane of the rib's knife support surface extends away from

cutter disk thereby confirming this different orientation.  Given Iggesund's

concession, Key Knife's construction should be adopted.

> **G.**    **"at a substantially acute angle to the first knife edge forming surface and first surface of the disk"**

Iggesund's construction, which tries to convert the claimed "surfaces" into

"planes," directly contradicts the ordinary meaning of the words chosen by

Iggesund to describe its invention.  Nothing in the patent's intrinsic evidence

suggests that Iggesund equated the term "surface" with "plane."  Indeed, just the

opposite is shown as the specification consistently uses "surface" to describe

physical objects, like "chip breaking surface 22," and "plane" to define geometric

concepts, like "plane $P_1$".  Simply put, the claim requires the first plane to form an

acute angle with "the first knife edge forming surface *and* first surface of the disk."

Iggesund cannot alter its claim language now.  Its construction should be rejected.

Iggesund also complains that Key Knife proposes the first plane must

"cross" these two surfaces.  Iggesund can offer no geometric explanation for how a

plane can "diverge outwardly" "at a substantially acute angle" to two surfaces and

<u>not</u> cross those surfaces.  If they do not cross, no angle is formed.

> **H.**    **"and downwardly in the direction of chip flow in the passageway"**

Key Knife refers the Court to its previous discussion of this term in its

opening brief and Section V(D) above.

9

**I.   "the first and second surfaces of the rib intersect at an acute angle"**

Iggesund's construction of this term blatantly ignores the patent's claim language and what it said to the USPTO.  The claim term simply says that "the first and second surfaces intersect at an acute angle."  There is nothing ambiguous about two surfaces intersecting at an angle and thereby forming a point.  Indeed, during prosecution that is exactly how Iggesund described these surfaces.  ('595 Pat. FH, 213) ("rib 24, in the present invention has an acute angle between its two surfaces").  Iggesund improperly injects "extensions thereof" in its construction to turn these "surfaces" into "planes."  As it has done several times, Iggesund confuses the physical term "surface" with the geometric term "plane."  Iggesund should not be allowed to rewrite its claim.[4]

**J.     "below the point at which the outer surface of the carrier part intersects the load bearing contact surface of the carrier part"**

Iggesund's construction once again includes concepts such as "spot or place spaced from and opposite" and "counterknife," which simply add confusion.  As such, Iggesund's construction should be rejected.

---

[4]   Ironically, in the "substantially acute angle" claim above, Iggesund criticized Key Knife for using "cross" to define how angles are formed.  Now, Iggesund uses "cross" to define how this "acute angle" is formed.

## VI.   Key Knife's Responses to Iggesund's '313 Patent Constructions

### A.   "first knife edge forming surface"

Key Knife refers the Court to the discussion of this term in Section V(A).

### B.   "a first, chip directing portion which defines said chip directing portion of the knife extending outwardly from said planar portion of said chip breaking surface generally along a first plane"

Iggesund improperly equates the rib's "first, chip directing portion" to the previously claimed "continuously smoothly curved generally concave chip directing portion" even though these elements use different language to describe different structures.  As explained in Key Knife's Opening Brief, this claim language is directed to a part of the rib that extends along a plane and simply cannot be the same structure as the earlier "chip directing portion" term, which Iggesund concedes is "concave," "continuously and smoothly curved" and "not planar." [5]  (Key Knife's Opening Claim Construction Brief, pp. 23-24).

Iggesund's explanation of the intrinsic evidence is confusing and makes several contradictory arguments.  For example, while admitting that an original claim term "concave" (used to describe the previous element) had to be amended to "continuous, smoothly curved generally concave," Iggesund contends these

_____

[5] *See Joint Claim Construction Statement* [Doc. 50, Ex. A, p. 13].  The parties agree that the "chip breaking surface" term includes both a planar, or flat, portion and another "chip directing portion" which is concave and smoothly curved, i.e., not planar.

11

same "curved" shapes can nevertheless extend "along a plane." Also, while citing

to "plane 24 a" from the file history ('313 Pat. FH, 76), which clearly shows a

<u>plane</u> – not a <u>curve</u> – defining part of the rib, Iggesund nonetheless contends "plane

24 a" is "simply part of the curve." Iggesund's construction should be rejected.

> **C.   "which is transverse to a second plane defined by said first knife edge forming surface"**

Iggesund's construction includes reference to "an imaginary surface."

Since, by definition, planes are imaginary surfaces, this addition is unnecessary.

> **D.   "diverges outwardly from the knife body behind said chip deflecting surface"**

Iggesund's arguments supporting its construction of this term concede that

the ambiguous "chip deflecting surface" term is in the patent due to an amendment

error. As fully explained in Key Knife's Opening Brief, Iggesund improperly

equates "chip deflecting surface" to "the [curved, concave] chip directing portion"

of the "chip breaking surface" because the prosecution history shows that Iggesund

equated "chip deflecting surface" to the rib's "first, chip directing portion."

Fundamentally, since this claim term discusses how the rib's two surfaces are

oriented, Iggesund offers no justification for why this term should refer to other

parts of the knife.

12

E.    "said chip deflecting surface"

Key Knife refers the Court to the preceding section and also to its opening brief for construction of this term.

F.    "at an acute angle to said chip deflecting surface"

As previously discussed, Iggesund's construction rewrites the term so that two "planes" intersect at an acute angle.  This is improper because the claim requires the "first, chip deflecting surface" – not the "first plane" – to intersect with the "third plane" at an acute angle.  Iggesund's construction is improper.

G.    "said acute angle being defined substantially within the rib between said first and third planes"

Iggesund's construction ignores two critical claim amendments made during prosecution.  These amendments require the acute angle formed by the intersection of the third plane and the rib's "first, chip directing portion" to be located substantially within the rib *and* between the first and third planes.  The prosecution statements also make clear that "the angle formed by the sides [24a, 32] of the rib [24] is acute" (*Id*. at 58), and "that the angle referred to as the acute angle is defined within the rib between said first and third planes." (*Id*. at 94).

13

**H.**   **"said first knife support surface and said chip deflecting surface converging to form a tip portion of said rib"**

Iggesund's construction improperly includes a rounded rib limitation.  This limitation is not in the claim and should be rejected.  There is no support in the intrinsic evidence for this concept.  The '313 Patent's claims contain many details about the rib tip and if Iggesund desired a rounded tip, then it should have written its claims that way.

**I.**   **"said first and third planes intersecting substantially at said tip portion"**

This term simply requires two planes (first and third) to intersect at the tip portion.  In other words, these two <u>planes</u> must intersect at the tip portion formed by two <u>surfaces</u>.  Although Iggesund contends Key Knife is trying to preclude a "rounded tip" for the rib, Key Knife is simply construing the many rib limitations added by Iggesund.  In short, Iggesund's claim language and prosecution arguments exclude a rounded tip, not Key Knife's construction.

**J.**   **"said second and third planes intersecting at a point located within the area of projection of the knife onto said second plane"**

As Key Knife discussed in its opening brief, Iggesund's construction improperly adds words and concepts not in the claim language.  Key Knife's

construction combines the last two elements of this claim to condense and clarify Iggesund's complex claim language. Thus, Key Knife's construction is proper.

## VII.   Key Knife's Responses to Iggesund's '626 Patent Constructions[6]

### A.    "a first clamping surface"

Iggesund does not provide any support for including "at least a portion of which" in its proposed construction. Rather, Iggesund's cite to the '626 Patent fully supports Key Knife's construction "a first clamping surface" as "a first surface of a knife available for clamping the knife in a wood working machine." ('626 Pat., 6:64-7:1).

### B.    "a second opposed clamping surface" and "an opposed second clamping surface"

Like the preceding claim element, there is no support for Iggesund's addition of "at least a portion."

### C.    "opposed clamping features"

Iggesund's assertion that "features," the term used throughout the patent to describe an area, should be construed as "prominent structures, forms or characteristics" has no basis in the '626 Patent specification or file history.

---

[6]   Due to page limitations, and because the Parties constructions are not that different, Key Knife will not address every disputed '626 Patent claim element.

Moreover, the construction adds ambiguity as, for example, "prominent," "forms," and "characteristics" have no understood meaning.

Similarly, Iggesund's assertion that the "opposed clamping features" should be construed as being "at least partially facing each other" is not supported by any language from the '626 Patent and is contrary to the elected embodiment. Iggesund claims that elements 48 and 50 in Figures 1 and 2 support this construction; however, Figure 2 shows that concave hollows 48 and 50 are located on opposite ends of the first clamping surface and do **NOT** face each other.

Iggesund also argues that Key Knife's construction of "features or areas on opposite ends" is vague.  Yet, Figures 1 and 2 show that the clamping figures are on opposite ends of the first clamping surface near the cutting edges which are "areas" of that surface.  ('626 Pat., 10:10-11; Fig. 2).  Additionally, the Patent Examiner interpreted "opposed" consistent with Key Knife's position by using it to describe areas on the knife.  ('626 FH, p. 294) ("Examiner notes that *Derivaz* clamping features are opposed in that they are on opposite sides of the clamping knife, i.e., left and right, thus opposed").

### D.    "opposing surface portions inclined with respect to each other"

Iggesund's assertion that this term must be construed to cover the embodiments of FIGS. 3-4 of the '626 Patent is without merit for many reasons.

First, Iggesund specifically elected Figures 1 and 2 in response to a restriction requirement issued by the Patent Office.  (626 Pat. FH, 65). Accordingly, it is entirely appropriate for the claims to cover the elected embodiment (Figure 2) and exclude the unelected embodiments (Figures 3-5).  *See Acco Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) (affirming claim construction excluding invention pursued in related application due to restriction requirement).  Indeed, a review of the patent claims reveals that the vast majority of them specifically recite the "concave hollows" feature of the elected species of Figure 2 showing that it was that feature which was examined and allowed.

Second, claim differentiation supports Key Knife's construction. Both independent claim 12 (from which asserted claim 16 co-depends) and claim 30 (from which asserted claim 31 co-depends) say that the clamping features with inclined surface portions are "concave hollows."  This shows that the inventors thought the claim language being construed must cover 2 surface portions inclined with respect to each other as proposed by Key Knife.  Similarly, unasserted claim 37 says that "clamping features have surface portions which face each other" (which is Iggesund's construction) and that those features "are concave hollows." *See also*, Claims 38 and 39.

17

Next, Iggesund's arguments ignore the '626 Patent's specification.  The patent itself uses different language to describe the embodiments of Figures 3-5 ("the clamping features take the form of <u>opposing inclined surface sections</u> 148, 150"), than it uses to describe the embodiment that more closely resembles Figure 2, ("clamping features may also be structured such that each clamping feature comprises two <u>opposed surface sections inclined with respect to one another</u>").  ('626 Pat., 11:11-19).  It is the latter language that is used in the claim.

Iggesund also argues that Key Knife's construction is inconsistent with Iggesund's efforts during prosecution to distinguish the claim over the Derivaz reference.  However, the file history cited by Iggesund relates to the former claim language of "said clamping features comprising opposing inclined surfaces".  ('626 Pat. FH., 226).  In this same office action response, to overcome *Derivaz*, Iggesund amended claim 5 to recite "said clamping features comprising opposing surface portions inclined with respect to each other."  (*Id*. at 189).  Accordingly, to overcome prior art, Iggesund intentionally abandoned the language that closely followed the embodiments of Figures 3-5 in favor of language mirroring the concave hollows embodiment that matches Figure 2.

Finally, Iggesund makes the misguided criticism that Key Knife's construction improperly interprets "inclined with respect to each other" to modify

the immediately preceding phrase "opposing surface portions" rather than the much earlier term "opposing clamping features."  Basic rules of grammar support Key Knife's position that the "incline" clause describes how the "opposing surface portions" are oriented to each other - not how the "opposing clamping features" are oriented.  Indeed, Iggesund cannot explain why "surface portions" of the two "clamping features" that have already been claimed as "opposed" would not already be opposed - unless, as Key Knife proposes, each "clamping feature" has its own two "surface portions" that are opposed to one another.

### E.    "localization of clamping forces"

Iggesund argues that Key Knife's "localization" construction is incorrect because Key Knife "equates the term localization to 'positioning.'"  (Br. at 28).  Iggesund's statements stand in contrast to the specific language of the '626 Patent:

> It will be appreciated that clamping forces which are localized toward the edges 34, 36 and away from the middle section 52 are better able, because of their spaced apart *positioning*, to resist a twisting torque on the knife 32. ('626 Pat., 10:33-36).

Accordingly, Key Knife's construction is fully supported by the '626 Patent.  Iggesund's argument that localization means "concentrated," however, is not supported as the word "concentrated" does not appear anywhere in the patent.

### F.    "sized and shaped to register"

Iggesund proposes that "sized and shaped to register" means "dimensioned and formed relative to the clamping features to cause the knife and first clamping component to *align with each other to index the knife*."  This construction is incorrect because the plain and ordinary meaning of "register" does not include the concepts of aligning with and indexing a knife, and the '626 Patent uses "register" in contexts that are inconsistent with such construction.  For example:

> "Alternatively, the supporting portion 94 may be **sized and shaped to register with the middle section 52 without registering with the clamping features** 48, 50."  ('626 Pat., 9:24-26).

Thus, the '626 Patent uses the term "register" to mean contacts or conforms with as the cited portion of the patent clearly indicates that the supporting portion 94 is sized and shaped to conform to the middle section.  Further, such contact with the middle section, without registering with the clamping features, cannot cause the knife to align or index.

## VIII. Conclusion

Key Knife requests the Court to adopt its constructions for the patents-in-suit and reject Iggesund's constructions.  Key Knife's constructions – not Iggesund's – are consistent with Federal Circuit precedent and the patents' intrinsic evidence.

Respectfully submitted this 6th day of December, 2007.

TROUTMAN SANDERS LLP

_/s/ John M. Bowler_____
Douglas D. Salyers
Georgia Bar No. 623425
John M. Bowler
Georgia Bar No: 071770
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308
T: (404) 885-3000
F: (404) 885-3900
doug.salyers@troutmansanders.com
john.bowler@troutmansanders.com

## FONT CERTIFICATION

I certify that this document is presented in Times New Roman 14.

/s/ John M. Bowler_____
John M. Bowler
Georgia Bar No: 071770

21

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IGGESUND TOOLS AB, and
IGGESUND TOOLS, INC.,

      Plaintiffs, Counter-Claim
      Defendants.

   v.

KEY KNIFE, INC.,

      Defendant, Counter-Claim
      Plaintiff.

Civil Action No.:
1:07-CV-00949-WSD

## CERTIFICATE OF SERVICE

I have this day caused the foregoing **KEY KNIFE'S RESPONSE TO IGGESUND'S OPENING CLAIM CONSTRUCTION BRIEF** to be served upon counsel for the parties by electronic notification upon Attorneys for Plaintiffs, Counter-Claim Defendants as follows:

Pasquale A. Razzano
John D. Carlin
Sarah Sheldon Brooks
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York 10112
prazzano@fchs.com

George L. Murphy, Jr.
Audra A. Dial
Kilpatrick Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
gmurphy@kilpatrickstockton.com
adial@KilpatrickStockton.com

This 6th day of December, 2007

      /s/ John M. Bowler
      John M. Bowler

*Counsel for Defendant, Counter-Claim Plaintiff Key Knife, Inc.*

Key Knife Claim Construction Response Brief; Final